**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**CHRISTINA ALTIERI, on behalf of**
**herself and all others similarly situated,**

                                    **Plaintiff,**

        **v.**                                                          **1:17-CV-303**

**OVERTON, RUSSELL, DOERR, and**
**DONOVAN, LLP,**

                                    **Defendant.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


**DECISION & ORDER**

**I.    INTRODUCTION**

        Plaintiff Christina Altieri ("Plaintiff" or "Altieri") alleges in the Amended Complaint, dkt.

# 14, that Defendant Overton, Russell, Doerr, and Donovan, LLP  ("Defendant" or

"Overton") violated the Fair Debt Collections Practices Act, 15 U.S.C. § 1692, _et seq_.

("FDCPA"), when it sent her a debt collection letter.  _See_ Compl., dkt. # 1.  Defendant

moves pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the Amended Complaint, dkt. # 15,

which Plaintiff opposes. Dkt. # 18.  The Court has determined to decide the motion without

oral argument and has fully considered the parties' submissions relative to this motion.  For

the reasons that follow, the motion is granted in part and denied in part.

**II.    BACKGROUND**

        The Amended Complaint alleges that Overton sent a debt collection letter to Plaintiff

that stated, in pertinent part:

### OVERTON, RUSSELL, DOERR and DONOVAN, LLP
Attorneys and Counselors at Law

* * *

# DEBT COLLECTION NOTICE

CREDITOR: ALBANY MEDICAL CENTER

* * *

AMOUNT DUE: $5794.54

**WE ARE A DEBT COLLECTOR ATTEMPTING TO COLLECT THIS DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

UNLESS WITHIN 30 DAYS AFTER THE RECEIPT OF THIS LETTER, YOU DISPUTE THE VALIDITY OF THIS DEBT, OR ANY PORTION THEREOF, WE WILL ASSUME THE DEBT IS VALID.  IF YOU NOTIFY US IN WRITING WITHIN THE 30 DAY PERIOD THAT THE DEBT, OR ANY PORTION THEREOF, IS DISPUTED, WE WILL OBTAIN VERIFICATION OF THE DEBT OR A COPY OF A JUDGMENT (IF APPLICABLE) AND MAIL IT TO YOU. UPON WRITTEN REQUEST WITHIN THE 30 DAY PERIOD, WE WILL PROVIDE YOU WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR, IF DIFFERENT FROM THE CURRENT CREDITOR.

AT THIS TIME, NO ATTORNEY WITH THIS FIRM HAS PERSONALLY REVIEWED THE PARTICULAR CIRCUMSTANCES OF YOUR ACCOUNT.  HOWEVER, YOUR FAILURE TO RESPOND TO THIS LETTER WITHIN THE 30 DAY PERIOD WILL RESULT IN THE CONTINUATION OF OUR EFFORTS TO COLLECT THIS DEBT AND THE REPORTING OF THIS ACCOUNT TO A CREDIT REPORTING AGENCY.

Very Truly Yours,

Overton, Russell, Doerr and Donovan, LLP

Am. Compl., Ex. A ("Overton Letter").[1]

---

[1]The Overton Letter is attached to the Amended Complaint and relied on by Plaintiff throughout the Amended Complaint, therefore the Court considers it as a document incorporated by reference and integral to the Amended Complaint. *See Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.

(continued...)

2

Plaintiff claims this letter violates the FDCPA in varying respects (analyzed below).

## III.    STANDARD OF REVIEW

Rule 8(a) provides that a pleading shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).   On a motion to dismiss, the Court must accept "all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009) (internal quotation marks omitted).  This tenet does not apply to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*   While Rule 8(a)(2) "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-harmed-me-accusation." *Id.* (citation and internal quotation marks omitted).  A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.   A complaint which "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" is insufficient. *Id.* (citation omitted).

---

[1](...continued)
1995) ("[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.")(quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)).

## IV.    DISCUSSION

### a.    The FDCPA

Congress enacted the FDCPA in order "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).  "To achieve this goal, and to protect the most vulnerable population of debtors from abusive and misleading practices, courts have construed the FDCPA to require that debt collection letters be viewed from the perspective of the 'least sophisticated consumer.'" *Wendel v. Mullooly, Jeffrey, Rooney & Flynn, L.L.P.*, No. 15-CV-936-JTC, 2016 WL 1365483, at *4 (W.D.N.Y. Apr. 6, 2016), *aff'd* 689 F. App'x 45 (2d Cir. 2017)(quoting *Clomon v. Jackson*, 988 F.2d 1314, 1318–19 (2d Cir.1993)).  The least sophisticated consumer is a hypothetical individual who "lacks the sophistication of the average consumer and may be naive about the law, but is rational and possesses a rudimentary amount of information about the world." *Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, No. 16-2165-CV, --- F.3d ----,  2017 WL 5330081, at *4 (2d Cir. Nov. 14, 2017) (citation omitted).  "The standard is objective, pays no attention to the circumstances of the particular debtor in question, and asks only whether the <u>hypothetical</u> least sophisticated consumer could reasonably interpret the representation in a way that is inaccurate."  *Id.* (interior quotation marks and citation omitted, underscoring in original).   "The Second Circuit observed, however, that 'in crafting a norm that protects the naive and the credulous the courts have carefully preserved the concept of reasonableness,' and that some courts have held that 'even the least sophisticated

4

consumer can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care.'" *Wendel*, 2016 WL 1365483, at *4 (quoting *Clomon*, 988 F.2d at 1318–19). "In this way, the Second Circuit's 'least sophisticated consumer' standard is an objective analysis that seeks to protect 'the naïve' from abusive practices, while simultaneously shielding debt collectors from liability for 'bizarre or idiosyncratic interpretations' of debt collection letters." *Id.* (quoting *Clomon*, 988 F.2d at 1320); *see Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 173 (2d Cir. 2015)(FDCPA protection "does not extend to every bizarre or idiosyncratic interpretation of a collection notice[,] and courts should apply the standard in a manner that protects debt collectors against liability for unreasonable misinterpretations of collection notices."). "'Although courts are divided on whether breach of the least sophisticated consumer standard is a question of law or fact, the trend in the Second Circuit is to treat this question as a matter of law that can be resolved on a motion to dismiss.'" *Moukengeschaie v. Eltman, Eltman & Cooper, P.C.*, No. 14-CV-7539 (MKB), 2016 WL 1274541, at *4 (E.D.N.Y. Mar. 31, 2016)(quoting *Beauchamp v. Fin. Recovery Servs., Inc.*, No. 10-CV-4864, 2011 WL 891320, at *2 n.18 (S.D.N.Y. Mar. 14, 2011) and citing *Quinteros v. MBI Assocs., Inc.*, 999 F. Supp. 2d 434, 437 (E.D.N.Y. 2014) ("[B]ecause the least sophisticated consumer standard is objective, the determination of how the least sophisticated consumer would view language in a defendant's collection letter is a question of law" that the court may resolve on a motion to dismiss. (internal quotation marks omitted)), *Jones-Bartley v. McCabe, Weisberg & Conway, P.C.*, 59 F. Supp. 3d 617, 642 (S.D.N.Y. 2014) (same)).

The FDCPA imposes a standard of strict liability, so liability under the statute does

not require intent. *Moukengeschaie*, 2016 WL 1274541, at *4 (citing *Russell*, 74 F.3d at 33 ("Because the [FDCPA] imposes strict liability, a consumer need not show intentional conduct by the debt collector to be entitled to damages."); *Bentley v. Great Lakes Collection Bureau, Inc.*, 6 F.3d 60, 63 (2d Cir. 1993) ("The FDCPA is a strict liability statute, and the degree of a defendant's culpability may only be considered in computing damages." (citations omitted)). A collection letter will be considered deceptive under the FDCPA if it "could mislead a putative-debtor as to the nature and legal status of the underlying debt, or [if it] could impede a consumer's ability to respond to or dispute collection." *Gabriele*, 503 F. App'x at 94 (citing *Easterling v. Collecto, Inc.*, 692 F.3d 229, 235 (2d Cir. 2012)). This includes practices that are "contradictory, vague, or threatening." *Id.* at 96 (citing *Russell v. Equifax A.R.S.*, 74 F.3d 30, 35 (2d Cir. 1996) and *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 25–26 (2d Cir. 1989)). "A collection letter may also violate the FDCPA when its language is 'open to more than one reasonable interpretation, at least one of which is inaccurate.'" *Moukengeschaie*, 2016 WL 1274541, at *3 (quoting *Easterling*, 692 F.3d at 232).

### b. First Cause of Action

Plaintiff asserts in the First Cause of Action that the Overton Letter violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(3), and 1692e(10). Am. Compl. ¶24.[2] In this regard,

---

[2]Section 1692e prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Section 1692e(2)(A) prohibits a debt collector from "false[ly] represent[ing] . . . the character, amount, or legal status of any debt. " *Id.*, § 1692e(2)(A). Section 1692e(3) specifically prohibits a debt collector from "false[ly] represent[ing] or impl[ying] that any individual is an attorney or that any communication is from an attorney." *Id.* § 1692e(3). Section 1692e(10) prohibits a debt collector from "us[ing] any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." *Id.* § 1692e(10).

Plaintiff alleges that Overton violated the FDCPA by indicating, following the disclaimer that no attorney from the Overton law firm had reviewed the particular circumstances of the subject account, that Plaintiff's "failure to respond to [the Overton letter] within the 30 day period will result in the continuation of [Overton's] efforts to collect this debt and the reporting of this account to a credit reporting agency." Am. Compl. ¶¶ 13-24.  Plaintiff contends that given the letterhead identifying Overton as a law firm, "the 'least sophisticated consumer' will assume that actions which only an attorney and counselor at law can take such as the filing of a lawsuit will in fact be a part of the continuation of [Overton's] efforts to collect the debt which 'will' occur." *Id.*, ¶ 22.  Plaintiff also argues that, "to the 'least sophisticated consumer', the [second sentence of the disclaimer paragraph] of the collection letter at issue overshadows, confuses, and or conflicts with the . . . . disclaimer.  If nothing else, the nature of an attorney's involvement is ambiguous and therefore deceptive."  Pl. Mem. L. p. 5.

Section 1692e prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e, and Section 1692e(3) specifically prohibits "[t]he false representation or implication that any individual is an attorney or that any communication is from an attorney." *Id.*, § 1692e(3).   A violation of these sections occurs when an attorney or law firm sends a debt collection letter implying that an attorney has reviewed the legal status of the debt when, in fact, that review did not occur.  *Moukengeschaie*, 2016 WL 1274541, at *16  ("Such a letter may violate section 1692e(3) where 'the attorney or firm had not, in fact, engaged in [the] implied level of involvement.'")(quoting *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412

F.3d 360, 364 (2d Cir. 2005) and citing *Clomon*, 988 F.2d at 1320 (finding "unpersuasive" the attorney's argument that the "overstatement of the degree of an attorney's involvement in individual debtors' cases does not violate" section 1692e(3)).   However, attorneys may "participate in debt collection ... without contravening the FDCPA, so long as their status as attorneys is not misleading" to a consumer "regarding meaningful attorney involvement in the debt collection process." *Greco*, 412 F.3d at 364.  A law firm or an attorney may send a debt collection letter "without being meaningfully involved as an attorney," provided a "clear disclaimer" explains "that the law firm or attorney sending the letter is not, at the time of the letter's transmission, acting as an attorney." *Id.*

In *Greco*, a law firm's debt collection letter contained a notice advising the recipient to notify the law firm within 30 days if he or she disputed the validity of the debt, and, in the absence of such notification, the law firm would consider the debt valid. *Id.* at 361.[3]  The letter also stated:

> The firm of Trauner, Cohen & Thomas is a law partnership representing financial institutions in the area of creditors rights. In this regard, this office represents the above named BANK OF AMERICA who has placed this matter,

---

[3] This indicated:

1. Unless, within 30 days after receipt of this notice you dispute the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the creditor and by this Firm.

2. If you notify us in writing within said 30 days that the debt, or any portion thereof is disputed, we will obtain verification of the debt, or a copy of any judgment against you, and we will mail such verification to you.

3. In addition, upon your written request within said 30 days, this Firm will provide the name and address of the original creditor if the original creditor is different from the current creditor.

4. This firm is attempting to collect a debt on behalf of the creditor and any information obtained will be used for that purpose.

*Greco*, 412 F.3d at 361.

> in reference to an original account with [*sic*] for collection and such action as necessary to protect our client.
>
> At this time, no attorney with this firm has personally reviewed the particular circumstances of your account.  However, if you fail to contact this office, our client may consider additional remedies to recover the balance due.

*Id.*

In addressing whether representations in the *Greco* letter violated the FDCPA, the Second Circuit found:

> [T]he defendants' letter included a clear disclaimer explaining the limited extent of their involvement in the collection of Greco's debt. The defendants stated that, although "this office represents the above named BANK OF AMERICA" in the collection of Greco's debt, "at this time, no attorney with this firm has personally reviewed the particular circumstances of your account." Nothing else in the letter confused or contravened this disclaimer of attorney involvement.

*Id.*, at 365.

In light of the disclaimer in the letter sent to Greco, the Second Circuit agreed with the district court "that the least sophisticated consumer, upon reading this letter, must be taken to understand that no attorney had yet evaluated his or her case, or made recommendations regarding the validity of the creditor's claims."  *Id.*   Accordingly, the *Greco* Court affirmed the district court's conclusion that, "as a matter of law, . . .  the defendants had not used any 'false, deceptive, or misleading representation or means in connection with the collection of any debt,' 15 U.S.C. § 1692e, including the 'false representation or implication that any individual is an attorney or that any communication is from an attorney,' 15 U.S.C. § 1692e(3), with meaningful involvement as an attorney in the debtor's case."  *Id.*

The first sentence of the Overton Letter's disclaimer paragraph ("At this time, no

attorney with this firm has personally reviewed the particular circumstances of your account.") is identical to the first sentence of the disclaimer paragraph approved in *Greco*. "Since *Greco*, the Second Circuit has reaffirmed the dismissal of section 1692e(3) claims based on collection letters containing similar disclaimer language." *Moukengeschaie*, 2016 WL 1274541, at *17 (citing cases). But Plaintiff asserts that given the letterhead identifying Overton as a law firm, "the 'least sophisticated consumer' will assume that actions which only an attorney and counselor at law can take such as the filing of a lawsuit will in fact be a part of the continuation of [Overton's] efforts to collect the debt which 'will' occur," Am. Compl. ¶ 22, and argues that the second sentence ("However, your failure to respond to this letter within the 30 day period will result in the continuation of our efforts to collect this debt and the reporting of this account to a credit reporting agency.") overshadows, confuses, and/or conflicts with the disclaimer language in the first sentence. The Court disagrees.

In *Wendel v. Mullooly, Jeffrey, Rooney & Flynn, LLP*, 689 F. App'x 45 (2d Cir. 2017)(summary order), the Second Circuit reviewed a district court's Rule 12(b)(6) dismissal of FDCPA claims based on a law firm's debt collection letter. The letter indicated that the law firm had been "retained" by the creditor in connection with an alleged debt, and that the creditor "may invoke its right to file a lawsuit against you." *Id.*, at 46. In addition to providing 30-day notices about disputing the debt, the *Wendel* letter also indicated:

> This communication is from a debt collector. We are attempting to collect a debt and any information obtained will be used for that purpose.

> At this time, no attorney with this firm has personally reviewed the particular circumstances of your account.

10

*Id.*

The Second Circuit found the *Wendel* letter contained "the same disclaimer that we approved in *Greco*," and even went "further by explaining that '[t]his communication is from a debt collector.'" *Id.* Furthermore, the Second Circuit rejected the debtor's arguments that the disclaimer was rendered ineffective by (1) the use of the word "retained" in the letter's opening sentence; (2) the warning that "the [creditor] may invoke its right to file a lawsuit against you"; and (3) the location of the *Greco* disclaimer at the end of the letter, below the 30-day notices. *Id.* The Circuit found the word "retained" to be no more suggestive of attorney involvement than "represents," the word used in *Greco*. *Id.* Regarding the reference to the creditor's right to file a lawsuit, the Circuit found the statement "is arguably stronger than the euphemisms in *Greco*,"[4] but "does not 'confuse[ ] or contravene[ ]' the explicit disclaimers of attorney involvement that appear later in the letter." *Id.* (quoting *Greco*, 412 F.3d at 365). The Circuit also found that the "[i]nsertion of the *Greco* disclaimer in the fourth paragraph, rather than the first, does not bury it." *Id.*, at 47. In this regard, the Second Circuit wrote: "The body of the letter contains eight sentences that fit on approximately half of a page. Even an unsophisticated individual can be expected to read the entire letter and comprehend the full text." *Id.* (citing *Greco*, 412 F.3d at 363 ("even the least sophisticated consumer can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care" (internal quotation marks omitted)). Accordingly, the Second Circuit affirmed the judgment of the district court. *Id.*

---

[4]In *Greco* the letter referred to "such action as necessary to protect our client" and warning that "our client may consider additional remedies to recover the balance due." *Greco*, 412 F.3d at 361.

The Overton Letter, only six (6) sentences long,  contains not only a clear *Greco* disclaimer but also a bolded statement at the top of the letter indicating that Overton is "**A DEBT COLLECTOR ATTEMPTING TO COLLECT THIS DEBT.** " Overton Letter.  This combination is functionally equivalent to the disclaimers found sufficient in *Wendel*.  Further, unlike in *Wendel* or *Greco*, there is no indication that the Overton law firm had been retained by, or represented, the creditor.

Also unlike in *Wendel*, here there is no indication in the Overton Letter that Overton or the creditor were considering legal action.  The use of the phrase "will result in the continuation of our efforts to collect this debt" in the Overton Letter, when read in context, would not signify to the least sophisticated consumer that Overton was acting in the capacity of attorney at the time the letter was sent, or that future legal action such as a lawsuit was contemplated at the time.[5]  The language is contingent on a future event (*i.e.* the failure to challenge the validity of the debt within 30 days) and indicates only that Overton would continue its "efforts to collect this debt and the reporting of this account to a credit reporting agency" if the recipient did not respond.  Plaintiff is correct that the use of the active verb "will" makes the sentence an unequivocal statement that Overton intends to take some action to collect the debt if the recipient does not challenge its validity within 30 days, but, beyond reporting to a credit reporting agency, the statement is equivocal as to what other collection efforts would be employed.  The fact that the statement appears in a letter from a law firm does not, by itself, mean that Overton was threatening legal action. *See Avila v. Riexinger & Assocs., LLC*, 644 F. App'x 19, 22 (2d Cir. 2016)(summary

---

[5]Plaintiff has not pleaded that the Overton Letter violated Section 1692e(5), which prohibits a debt collector from "threat[ening] to take any action that cannot legally be taken or that is not intended to be taken."

order)("[T]he letters do not threaten legal action. Rather, they simply state that the debt collector '*may* consider additional remedies' and that the accounts were placed with an attorney for 'such action as necessary.'  Such equivocal statements do not give rise to liability under Section 1692e.")(emphasis in original, citation to the record omitted). Applying the least sophisticated consumer standard, and reading the sentence in context, does not result in FDCPA liability. *Id.*   The sentence does not overshadow, confuse, or conflict with the disclaimer in the preceding sentence. *See Wendel,* 689 F. App'x at 46; *Greco*, 412 F.3d at 365.  To conclude otherwise would amount to an unreasonable interpretation of the debt collection letter. *See Wendel,* 689 F. App'x at 47 ("The body of the letter contains eight sentences that fit on approximately half of a page. Even an unsophisticated individual can be expected to read the entire letter and comprehend the full text.").

Plaintiff's reliance on *Lesher v. Law Offices of Mitchell N. Kay, PC*, 650 F.3d 993 (3d Cir. 2011) is misplaced.  In *Lesher*, unlike in the instant case, the attorney involvement disclaimer was printed on the back of the collection letter.  *See id.,* at 1003 ("Nor do we believe that the disclaimers included in the letters, which are printed on the backs, make clear to the least sophisticated debtor that the Kay Law Firm is acting solely as a debt collector and not in any legal capacity in sending the letters.").  Here, by contrast, the *Greco* disclaimer appears on the front of the short letter.  *Greco* is the controlling authority in this Circuit, *see Avila*, 644 F. App'x at 22 ("Whatever the merits of *Greco*, we are bound by that decision."), and based upon *Greco* and its progeny, the Court finds that the second sentence of the disclaimer paragraph in the Overton letter would not mislead the least

sophisticated consumer as to attorney involvement at the time the letter was sent. *See Wendel*, 2016 WL 1365483, at *5 ("In light of the *Greco* disclaimer, the court finds that the least sophisticated consumer, upon reading this letter, must be taken to understand that no attorney had yet evaluated the case or made recommendations regarding the validity of the creditor's claims.").

Accordingly, the Court finds that the Overton Letter does not contain any "false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e, including the "false representation or implication that any individual is an attorney or that any communication is from an attorney," *id*. § 1692e(3), with meaningful involvement as an attorney in the debtor's case.   Further, the Court finds that representations in the Overton Letter about the nature of attorney involvement do not constitute violations of Sections 1692e(2)(A)[6] and/or 1692e(10).   Thus, Defendant's motion is granted as to the First Cause of Action.  Because Plaintiff, who is represented by counsel, amended the Complaint after Defendant first moved to dismiss the Complaint, and because Plaintiff does not ask for leave to amend a second time or proffer facts that would change the result reached on the First Cause of Action, the First Cause of Action is dismissed without leave to replead. *See Shomo v. New York*, 374 Fed. Appx. 180, 182 (2d Cir. 2010)(As a general matter, "'the district court has discretion whether or not to grant leave to amend, and its decision is not subject to review on appeal except for abuse of discretion.'")(quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988));  *Cuoco v.*

---

[6]Although Plaintiff does not cite Section 1692e(2)(A) in support of the claim made in the Second Cause of Action, she alleges there that the Overton Letter is deceptive as to the "Amount Due" because the letter does not disclose that interest on the debt could be assessed. *See* Am. Compl. ¶¶ 25-38.  This contention is addressed in the text, *infra*, but does not defeat the portion of the motion addressed to the First Cause of Action.

*Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)(An opportunity to amend is not required where "the problem with [plaintiff's] causes of action is substantive" such that "better pleading will not cure it.")(citation omitted); *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993)("Where it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend.").

### b. Second Cause of Action

Plaintiff alleges in the Second Cause of Action that Defendant violated 15 U.S.C. § 1692e by stating in the Overton Letter that the "Amount Due" was $5794.54 but failed to indicate that this amount could increase due to interest assessed pursuant to N.Y. C.P.L.R. § 5001. *See* Am. Compl. ¶¶ 25-38. In this regard, Plaintiff asserts: "[Overton] or Albany Medical College could seek [N.Y. C.P.L.R. § 5001] interest that was accumulating after [the Overton Letter] was sent but before the 'Amount Due' of $5794.54 . . . was paid." *Id.* ¶ 36. Plaintiff also asserts: "In the alternative, . . . Albany Medical College could have sold Altieri's debt to a third party and such third party could seek the interest that accrued after [the Overton Letter] was sent but before the "Amount Due" of $5794.54 . . . was paid." *Id.* ¶ 37.

In *Avila v. Riexinger & Assocs., LLC*, 817 F.3d 72 (2d Cir. 2016)("*Avila II*"), the Second Circuit found that a debt collection letter violated Section 1692e when it failed to advise of accruing interest, writing:

> Because the statement of an amount due, without notice that the amount is already increasing due to accruing interest or other charges, can mislead the least sophisticated consumer into believing that payment of the amount stated will clear her account, we hold that the FDCPA requires debt collectors, when they notify consumers of their account balance, to disclose that the balance may increase due to interest and fees. We think that requiring such disclosure best achieves the Congressional purpose of full and fair disclosure to consumers that is embodied in Section 1692e. It also protects consumers

15

such as plaintiffs who may hold the reasonable but mistaken belief that timely
payment will satisfy their debts.

*Id.*, at 76.

Plaintiff does not allege that interest could be assessed on any basis other than N.Y.

C.P.L.R. § 5001.  Rather, Plaintiff argues that because interest could be assessed pursuant

to N.Y. C.P.L.R. § 5001, the failure to advise her of this possibility constitutes a violation of

Section 1692e as recognized in *Avila II*.   The Court does not agree.

New York C.P.L.R. § 5001 allows a court, in a civil action, to award prejudgment

interest "upon a sum awarded because of a breach of performance of a contract."  *Id.*, at §

5001(a); *see id.*, at § 5001(b)("Interest shall be computed from the earliest ascertainable

date the cause of action existed . . . .").  However, as Defendant correctly argues, N.Y.

C.P.L.R. § 5001 interest cannot be assessed unless and until a civil action is commenced.

*See Cruz, v. Credit Control Services, Inc.*, No. 217CV1994ADSGRB, 2017 WL 5195225, at

*5 (E.D.N.Y. Nov. 8, 2017) ("While the Plaintiff alleges that pre-judgment interest under N.Y.

C.P.L.R. § 5001 should be disclosed in the [debt collection] Letter, such a position doesn't

conform to the nature of such interest. Any request for pre-judgment interest must be made

to a court. Such an award by a court would be for an uncertain sum as at the time the Letter

was sent; no request was made nor was any calculation of such an award attempted.  The

allegations by Cruz that the Defendant or Geico could assess interest under § 5001 are

entirely speculative at best, and misstate the law at worst, as only a court may enter such a

judgment. Neither Geico nor the Defendant had any legal right to assess such pre-judgment

interest on the Plaintiff's account.")(citations omitted).  Here, there is no allegation that, at

the time the Overton Letter was sent, a civil action concerning the debt had been

16

commenced.  Thus, "[t]he amount owed stated in the [Overton] Letter was not false because Defendant had not yet commenced any legal action." *Bird v. Pressler & Pressler, L.L.P.*, No. 12-CV-3007 JS ETB, 2013 WL 2316601, at *2 (E.D.N.Y. May 28, 2013)(the plaintiff claimed that the collection letter violated the FDCPA because the debt collector did not indicate in the collection letter that interest was accruing but thereafter commenced a civil action seeking N.Y. C.P.L.R. § 5001 interest).

Further, there are no allegations in the Amended Complaint that interest on the "Amount Owed" accrued on any other basis, *see* Am. Compl. ¶ 32 ("Altieri owed this past due debt owed to Albany Medical College under a theory of contract or *quantum meruit*; and therefore NY CPLR 5001 is applicable to the past due debt owed to Albany Medical College set forth in [the Overton Letter]"), or that at the time Plaintiff received the Overton Letter she could not satisfy the debt by paying $5794.54.  Thus, contrary to the situation addressed in *Avila II*, the Overton Letter's statement of the Amount Due is not false and would not mislead the least sophisticated consumer from the belief that, at the time, payment of the Amount Due would clear her account.  *See Taylor v. Fin. Recovery Servs., Inc.*, 252 F. Supp. 3d 344, 352 (S.D.N.Y. 2017) ("The Second Circuit held [in *Avila II*] the plaintiff stated a claim because a reasonable consumer could 'be misled into believing that she could pay her debt in full by paying the amount listed on the notice' when interest and fees were continuing to accrue daily after receipt of the notice. But such confusion is not possible here: Plaintiffs adduce no evidence that paying the stated balance due in their respective letters would not satisfy their debts.")(quoting *Avila II*, 817 F.3d at 76).

The possibility that Albany Medical College could sell Plaintiff's debt to a third party

who, in turn, could seek N.Y. C.P.L.R. § 5001 interest also fails to state a claim under the

FDCPA.  For the reasons just discussed, the potential of future events (*i.e.* the debt is sold

to a third party and the third party commences a civil action seeking N.Y. C.P.L.R. § 5001

interest) does not make the Overton Letter's statement of the Amount Due false or a

violation of the rule announced in *Avila II*.  *See Bird*, 2013 WL 2316601, at *2;  *Taylor*, 252

F. Supp. 3d at 352.  Consequently, that portion of Defendant's addressed to the Second

Cause of Action is granted.  For the reasons discussed with regard to the First Cause of

Action, the Second Cause of Action is dismissed without leave to replead.

### c. Third Causes of Action

In support of the Third Cause of Action, Plaintiff re-asserts the first 12 paragraphs of

the Amended Complaint (which essentially set forth the allegations regarding Plaintiff's

receipt of the Overton Letter), *see* Am. Compl. ¶ 39, *id.* ¶¶, 1-12, and reasserts the

allegation that the "Amount Due" in the Overton Letter is $5794.54.  Plaintiff then alleges:

> If the alleged original creditor, a subsequent assignee, the entity that owned
> the debt on the date of [the Overton Letter], or [Overton] had a legal right to
> charge and/or collect from Altieri interest, late charges, and/or other charges in
> addition to the aforementioned "Amount Due", then the failure of [the Overton
> Letter] to notify Altieri that this "Amount Due" may increase due to interest, late
> charges, and/or other charges amounted to a violation by Defendant of 15
> USC § 1692e.

Am. Compl. ¶ 41.

In its moving Memorandum of Law, Overton offers no argument addressed to the

Third Cause of Action, mistakenly asserting that "[t]here is no Third Cause of Action." Def.

Mem. L. p. 15.  Presumably because Overton offered no argument addressed to the Third

Cause of Action, Plaintiff did not address this claim in her opposition papers. *See generally*,

Pl. Mem. L.   Overton argues in its reply memorandum of law, however, that the Third

Cause of Action should be dismissed "since the Third Cause of Action does not affirmatively

allege facts establishing the accrual of contractual interest and fees." Reply Mem. L., p. 9.

Although the Court fails to see a difference between the allegations in the Third

Cause of Action and the allegation contained in paragraph 37 of the Second Cause of

Action, courts generally do not address arguments raised for the first time in a reply

memorandum of law.  *See, e.g., Gilmore v. Bouboulis*, No. 315CV0686GTSDEP, 2016 WL

4532146, at *16 (N.D.N.Y. Aug. 29, 2016)("The Court declines to reach Defendants'

argument . . . because it was raised for the first time in Defendants' reply memorandum of

law, foreclosing a response from Plaintiffs and preventing the issue from being more fully

fleshed out.)*; Ditullio v. Vill. of Massena*, 81 F. Supp. 2d 397, 408-09 (N.D.N.Y. 2000)

("Defendant may not first raise arguments ... in its reply papers because Plaintiff would not

have a fair opportunity to respond.").  In keeping with these decisions, that portion of

Defendant's motion directed to the Third Cause of Action is denied with leave to renew.  If

Defendant intends to renew this portion of the motion, it should do so by filing a Rule 12

motion within two (2) weeks of the date of this Decision and Order.

### d.  Fourth Cause of Action

In support of the Fourth Cause of Action, Plaintiff reasserts the first 12 paragraphs of

the Amended Complaint and then alleges: "As a result of sending [the Overton Letter] to

Altieri, [Overton] violated 15 USC 1692g." Am. Compl. ¶ 43.  Defendant argues that the first

12 paragraphs of the Amended Complaint "assert no wrongdoing whatsoever," and that the

Fourth Cause of Action should be dismissed because it "generically asserts [a] FDCPA

violation[]."  Def. Mem. L. p. 15.  Plaintiff argues in opposition:

> In *Carlin v. Davidson Fink LLP* No. 15-3105-cv, FN 3 (2nd Cir., 2017), the Second Circuit held that a letter required under 15 USC 1692g also required certain language similar to the "safe-harbor language" set forth in *Avila*, *supra,* in order for the letter required under 15 USC 1692g to properly set forth the amount of the "debt". For the same reasons why the letter in the case at bar runs afoul of *Avila*, *supra*, the letter also runs afoul of *Carlin*, *supra*. Therefore, Plaintiff's Fourth Cause of Action is properly plead [*sic*].

Pl. Mem. L., p. 14.

> Section 1692g(a) provides in pertinent part:

> (a) Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

> > (1) the amount of the debt....

15 U.S.C. § 1692g(a).

In addressing a claimed violation under Section 1692g, the Second Circuit held that a mortgage Payoff Statement was incomplete because it omitted information allowing "the least sophisticated consumer to determine the minimum amount she owes at the time of the notice, what she will need to pay to resolve the debt at any given moment in the future, and an explanation of any fees and interest that will cause the balance to increase." *Carlin v. Davidson Fink LLP*, 852 F.3d 207, 216 (2d Cir. 2017).  In making this determination, the Second Circuit acknowledged the safe-harbor statement formulated in *Avila II*,[7] but found

---

[7]In *Avila II* the Second Circuit held:

[A] debt collector will not be subject to liability under Section 1692e for failing to disclose that the consumer's balance may increase due to interest and fees if the collection notice either accurately informs the consumer that the amount of the debt stated in the letter will increase over time, or clearly states that the holder of the debt will accept payment of the amount set forth in full satisfaction of the debt if payment is made by a specified date.

(continued...)

that the Payoff Statement was insufficient because it "only expressed that the Total Amount

due *may* include *estimated* fees and costs" but there was "no clarity as to whether new fees

and costs are accruing or as to the basis for those fees and costs." *Carlin*, 852 F.3d at 217

(emphases in original).  The *Carlin* Court further noted in footnote 3:

> As we explained in *Avila*, though not required by the text of the statute, a
> notice would also satisfy § 1692g if it used language such as : "As of today,
> [date], you owe $___. This amount consists of a principal of $___, accrued
> interest of $___, and fees of $___. This balance will continue to accrue
> interest after [date] at a rate of $___per [date/week/month/year]." 817 F.3d at
> 77 n. 2 (citing *Jones v. Midland Funding, LLC.*, 755 F. Supp.2d 393, 397 n. 7).

*Id.*, n. 3.

While the Overton Letter does not contain language similar to that referenced in

footnote 3 of *Carlin*, there is no plausible *Avila II* violation here because Plaintiff fails to

allege facts from which to conclude that, at the time the Overton Letter was sent, there

existed a basis for the Amount Owed to increase.  Plaintiff also does not allege that the

Overton Letter constitutes a communication following an "initial communication," as required

by Section 1692g.  *See Carlin*, 852 F.3d at 212 ("In assessing Carlin's claim, § 1692g(a)

calls upon us to make three determinations: (1) whether any of the communications

between the parties were 'initial communications' within the meaning of § 1692g, (2)

whether any of the communications between the parties were 'in connection with the

collection of any debt,' and (3) whether Davidson Fink provided the amount of the debt

within five days of such a communication."). Thus, that portion of Defendant's motion

addressed to the Fourth Cause of Action is granted.  For the reasons discussed above with

---

[7](...continued)
817 F.3d at 77.

regard to the First and Second Causes of Action, the dismissal is without leave to replead.

### e. Fifth and Sixth Causes of Action

The Fifth and Sixth Causes of Action are pled similarly to the Fourth Cause of Action, with Plaintiff re-alleging the first 12 paragraphs of the Amended Complaint and then asserting that: (1) "[The Overton Letter] amounted to a false, deceptive or misleading means in connection with the collection of a debt in violation of 15 USC 1692e, 15 USC 1692e(2)(A), and 15 USC 1692e(10)," (Fifth Cause of Action); and (2) "[The Overton Letter] amounted to an unfair or unconscionable means to collect or attempt to collect a debt in violation of 15 USC 1692f, and/or 15 USC 1692f (1)," (Sixth Cause of Action).  Am. Compl. ¶¶ 45, 47.   Like with regard to the Fourth Cause of Action, Defendant argues that these Causes of Action merely assert generic FDCPA violations "based upon the first 12 paragraphs of the Amended Complaint, which asserts no wrongdoing whatsoever," and that to the extent these claims are based upon the First and Second Causes of Action, they are subject to dismissal.  Def. Mem. L. p. 15.  Plaintiff offers no opposition to dismissal of the Fifth and Sixth Causes of Action.

The Fifth and Sixth Causes of Action, as pled, amount to unadorned, the-defendant-harmed-me-accusations that lack factual content that allows the Court to draw the reasonable inference that Defendant is liable for the misconduct alleged. *See Ashcroft*, 556 U.S. at 678.   Accordingly, Defendant's motion addressed to the Fifth and Sixth Causes of Action is granted.   For the reasons discussed with regard to the First, Second, and Fourth Causes of Action, the Fifth and Sixth Causes of Action are dismissed without leave to replead.

22

## V.    CONCLUSION

For the reasons discussed above, Defendant's motion to dismiss the Amended Complaint [dkt. # 15] is **GRANTED in part and DENIED in part**. The motion is granted in that the First, Second, Fourth, Fifth, and Sixth Causes of Action are **DISMISSED with prejudice**. The motion is denied as to the Third Cause of Action, and Defendant is granted leave of two (2) weeks from the date of this Decision and Order to file a second Rule 12 motion.

**IT IS SO ORDERED.**

Dated:November 14, 2017

Thomas J. McAvoy
Senior, U.S. District Judge

23